### IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE OCEGUERA, | : | 1:20-cv-1235 |
| | : | |
| Petitioner, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| MATTHEW T. ALBENCE, *Acting Director* | : | |
| *of Immigration and Customs Enforcement,* | : | |
| *et al.,* | : | |
| | : | |
| Respondents. | : | |

## **MEMORANDUM AND ORDER**

### **July 29, 2020**

As the parties to this matter are aware, on July 17, 2020, we issued a Temporary Restraining Order ("TRO") enjoining the Respondents from deporting the Petitioner Jose Oceguera for a period of fourteen (14) days from the date of the TRO. (Doc. 6). We ordered and have received expedited briefing from the parties on the Petitioner's request to turn the TRO into a preliminary injunction. (Docs. 10 and 11). This matter is therefore ripe for our review. For the reasons that follow, we shall deny Petitioner's request for a preliminary injunction and permit the TRO to expire.

### I.    STANDARD OF REVIEW

It is well-established that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer

irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Apple Inc. v. Samsung Electronics Co.*, 695 F.3d 1370, 1373–74 (Fed. Cir. 2012) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365 (2008)).

The Supreme Court has emphasized that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Apotex Inc. v. U.S. Food and Drug Admin.*, 508 F.Supp.2d 78, 82 (D.D.C. 2007) ("Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly."). "Awarding preliminary relief, therefore, is only appropriate 'upon a clear showing that the plaintiff is entitled to such relief.'" *Groupe SEC USA, Inc. v. Euro–Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014) (quoting *Winter*, 555 U.S. at 22).

With these touchstones in mind, we turn to an analysis of the Petitioner's request for a preliminary injunction.

## II.  DISCUSSION

Our assessment must begin with our consideration of Petitioner's likelihood of success on the merits. Integral to this analysis is a review of the factual and procedural underpinnings of this case.

Petitioner and the U-Visa Program

Petitioner Jose Oceguera ("Petitioner" or "Oceguera") is a national and citizen of Mexico who had been previously convicted of an aggravated felony. Prior to his conviction, Oceguera was a lawful permanent resident of the United States.  (Doc. 1, ¶¶ 41 and 42).  He is currently being held in the custody of Immigration and Customs Enforcement ("ICE") at the Clinton County Correctional Facility in McElhattan, Pennsylvania, located in the Middle District of Pennsylvania.  A final order of removal has been entered against Oceguera and he is due to be deported imminently.[1]

On June 30, 2020, Petitioner filed an application for a U-Visa with the United Sates Citizenship & Immigration Services ("USCIS").  Pursuant to 8 U.S.C. § 1101(a)(15)(U), individuals who are victims of certain crimes – including sexual assault, domestic violence and stalking – can apply for a U-Visa if they have "suffered substantial physical and mental abuse as a result of having been a victim of [such] criminal activity,"  and are helpful or likely to be helpful to law enforcement in the investigation or prosecution of the crime.  *Id.*  After at least 3

---

[1] Within his request for a TRO, which was filed in the late afternoon hours of Friday, July 17, 2020, Oceguera alleged that he had been advised by ICE officials that he was going to be deported to Mexico the following Monday.  Given this exigency, we entered the TRO as requested to preserve the status quo so that we could carefully consider merits the Petitioner's claims under measured circumstances.

years of physical presence in the United States, a U-Visa holder may apply for permanent residence status.  *See* 8 U.S.C. § 1255(m).

Congress has limited the number of U-Visas that may be issued in any fiscal year to 10,000 (not including spouses or children securing legal status derivatively of the principal petitioner).  *See id.* § 1184(p)(2)(A).  Applicants who have been approved but have not yet received visas "due solely to the cap" are placed on a "waiting list."  8 C.F.R. § 214.14(d)(2).  While on the waiting list, applicants receive "deferred action or parole" protecting them from removal, and the applicant and qualifying family members may receive work authorization.  *Id.*

Congress has authorized the Secretary of Homeland Security to grant "an administrative stay of a final order of removal" to allow U-Visa applicants to remain in the United States pending approval of their application, if the Secretary determines that the application "sets forth a prima facie case for approval."  8 U.S.C. § 1227(d)(1).  To be sure, while the USCIS has "sole jurisdiction over all petitions for [U-Visas]" 8 C.F.R. § 214.14(c), only ICE is responsible for granting administrative stays of removal to U-Visa applicants subject to final orders of removal.  *See id.* § 241.6.

To summarize, our Petitioner has a pending application for a U-Visa that has not yet been approved by the USCIS and he is subject to a final order of removal.

Director of Homeland Security

ICE is led by a single Director, appointed by the President with the advice and consent of the Senate. *See* 6 U.S.C. § 113(a)(1)(G). However, ICE last had a Senate-confirmed Director in January of 2017. Pursuant to DHS Delegation Number 00106, issued by then-DHS Secretary Jeh Johnson on December 15, 2016, the Deputy Director of ICE is first in the order of succession in the event of a vacancy in the position of Director of ICE, and is authorized to "exercise the powers and perform the functions and duties" of that office until the vacancy is filled. *See* DHS Delegation Number 00106. (Doc. 10, Ex. 6).

Respondent Matthew T. Albence was selected as Deputy Director of ICE on April 27, 2019. From July 7, 2019 to August 1, 2019, he served as the Acting Director of ICE. (Doc. 10, Ex. 7). Since August 2, 2019, he has remained the Deputy Director of ICE.

Guidance on the Issuance of Administrative Stays of Removal for U-Visa Applicants

Prior to the events at issue in this case, then-Acting Director of ICE David J. Venturella issued a memorandum to ICE Field Office Directors ("FOD") setting out guidance for the adjudication of stay requests filed by U-Visa applicants subject to final orders of removal. (Doc. 10, Ex. 5). That guidance provided that, upon receiving a stay request, a local Detention and Removal Operations office "must . . . request a *prima facie* determination from USCIS []." (Doc. 10, Ex. 5, p. 2). If

5

USCIS determined that the applicant had *prima facie* eligibility for a U-Visa, the guidance sated that "[t]he FOD should view a Stay request favorably, unless serious adverse factors exist." *Id.* Adverse factors could include "national security concerns," "evidence [of] significant criminal history," and "any significant public safety concerns." *Id.* Favorable factors could include humanitarian concerns. *Id.* The guidance also instructed the "FOD [to] use his or her discretion in making any determination about whether to remove an alien who has a pending U-Visa petition and has exhibited no adverse factors." *Id.* If the FOD found that serious adverse factors existed and was inclined to deny the request for a stay, the guidance required the FOD to provide a summary of the case to Detention and Removal Operations headquarters for further review. *Id.*

On August 2, 2019, Respondent Albence issued ICE Directive 11005.2: Stay of Removal Requests and Removal Proceedings Involving U Nonimmigrant Status (U Visa) Petitioners (hereinafter "the Directive"). (Doc. 10, Ex. 6). The Directive was signed by Respondent Albence as "Acting Director," although is term as Acting Director had expired the previous day. The Directive stated that "ICE will no longer request *prima facie* determinations nor expedited adjudications from USCIS," and instructed FODs to "consider the totality of the circumstances, any favorable or adverse factors (including the extent and nature of any criminal history), and any

federal interest(s) implicated" in determining whether to grant a stay. (Doc. 10, Ex. 6 at § 5.2.2).

On June 29, 2020, Oceguera filed an Application for Stay of Removal with ICE, referencing his U-Visa application that was filed the next day. On July 7, 2020, ICE denied Petitioner's stay application. Implicit in the Petitioner's argument is that his stay application would have been granted under the previous guidance issued by Acting Director Venturella and that the denial of his stay request was due to the Directive issued by Respondent Albence.

<u>Petitioner's Claims and Arguments</u>

Petitioner contends that Respondent Albence was improperly serving as the Acting Director of ICE when he issued the Directive, in violation of the Federal Vacancies Reform Act, 5 U.S.C. §§ 3345 *et seq.* ("FVRA"), the Appointments Clause of the Constitution, U.S. Const. art II, § 2, cl. 2, and the DHS enabling statute, 6 U.S.C. § 113. He further alleges that Albence's issuance of the Directive was *ultra vires* and in violation of the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* because Albence was improperly serving as the Acting Director of ICE when the Directive was issued. In his prayer for relief, Petitioner seeks a declaration that Respondent Albence's issuance of the Directive was invalid and void. Petitioner further requests that the Court enjoin the implementation of the Directive. Finally, and important to our analysis, Petitioner requests that we enjoin his deportation

during the pendency of this litigation and "thereafter in the event the Court finds in his favor."  (Doc. 1, Prayer for Relief).

Likelihood of Success on the Merits

While cast as matter brought to address violations of, *inter alia*, the FVRA and the APA, the Petitioner's ultimate goal, as set forth in the final portion of his prayer for relief, is to prevent and stop his deportation.  However, regardless of the merits of his statutory and constitutional claims, this Court lacks subject matter jurisdiction to review or alter his final order of removal.

The REAL ID Act of 2005, codified at Section 1252 of Title 8 of the United States Code, specifically strips federal district courts of subject-matter jurisdiction over clams attacking the federal government's decision to enforce a final removal order.  *See* 8 U.S.C. § 1252(a)(5)("a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act . . ."); *see also Jordon v. Attorney Gen. of U.S.,* 424 F.3d 320, 326 (3d Cir. 2005).  Thus, pursuant to this statute, jurisdiction to review removal orders and related matters resides exclusively with the Courts of Appeals.  Therefore, this Court lacks jurisdiction to enjoin Petitioner's removal order.

Because this Court lacks the subject matter jurisdiction to grant the Petitioner with the ultimate relief he seeks, Petitioner clearly has not demonstrated a likelihood

of success on the merits.  Since Petitioner has failed to carry his burden on this threshold question, we need not address the other factors attendant to a preliminary injunction analysis.  Accordingly, we shall deny Oceguera's Motion for Preliminary Injunction.[2]

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1. The Motion for Preliminary Injunction filed by Petitioner Jose Oceguera (Doc. 2) is **DENIED**.

2. The Temporary Restraining Order (Doc. 6) issued on July 17, 2020 shall be permitted to expire on July 31, 2020.

3. By or before August 31, 2020, Petitioner shall show cause why this matter should not be dismissed for lack of subject matter jurisdiction.

s/ John E. Jones III
John E. Jones III, Chief Judge
United States District Court
Middle District of Pennsylvania

---

[2] While we pass no judgment on the merits of Petitioner's statutory or constitutional claims, we note editorially that we also lack jurisdiction to "hear any cause or claim by or on behalf of any alien arising out of the decision or action by the Attorney General to . . . execute removal orders against any alien."  8 U.S.C. § 1252(g).  This statute has been interpreted to include denials of stays of removal, and courts have rejected claims brought under the APA that challenge ICE's denial of a stay of removal.  *See Garcia v. Dep't of Homeland Security*, 2019 U.S. Dist. LEXIS 222683 *9-10 (N.D. Ill. Dec. 30, 2019).  Moreover, even if this Court were to find that Albence's Directive was issued inappropriately, we harbor considerable doubts that we have the power to reinstitute the prior guidance that Petitioner finds more favorable.  Additionally, under no set of circumstances can we direct ICE to issue a stay to Petitioner pending his U-Visa application.